UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABRAHAM ESTREMERA, | ) | |
| | ) | No. 09 C 6519 |
| PETITIONER, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| RESPONDENT. | ) | |

**MEMORANDUM OPINION AND ORDER**

A jury convicted petitioner Abraham Estremera of conspiring to distribute cocaine and felony possession of a firearm. The Court, Judge Holderman presiding, sentenced Estremera to life imprisonment. Estremera then filed a petition under 28 U.S.C. § 2255 collaterally attacking his conviction on the grounds that he would have pled guilty if his appointed attorney—Donald Young—had reviewed with him, and accurately explained the terms of, two draft plea agreements. On March 2, 2012, Judge Holderman denied Estremera's § 2255 petition without conducting a hearing. R. 30. The Seventh Circuit reversed Judge Holderman's order and remanded the case for an evidentiary hearing. *See Estremera v. United States*, 724 F.3d 773, 778-79 (7th Cir. 2013). On remand, the case was reassigned to the undersigned judge. R. 60. The Court held an evidentiary hearing on June 6, 2014, at which Estremera and Young testified. R. 89. The Court has reviewed the parties' post-hearing briefs and, for the following reasons, denies Estremera's § 2255 petition.

## BACKGROUND

Estremera was arrested on July 24, 2002 pursuant to a complaint charging him with conspiracy to distribute cocaine. *United States v. Estremera*, No. 02-CR-719-11 (N.D. Ill.) ("*Estremera I*"), Rs. 1, 33. Shortly after his arrest, Estremera told an FBI Agent that "he would take responsibility for his [drug trafficking] activities . . . but stated that he is, 'not a stool pigeon" and would 'never rat anyone out.'" R. 103-3 at 2 (FBI 302 Report); *see also id*. at 3-4 (reiterating that he was "ready to take responsibility for his actions," but would not provide information about other individuals the FBI was investigating).

In September 2002, Estremera filed a *pro se* motion to replace his appointed attorneys, Scott Frankel and James Tunick, citing "irreconcilable distrust." *Estremera I*, No. 02-CR-719-11, R. 104.[1] Approximately two weeks later, Young filed his appearance as appointed counsel on Estremera's behalf. *Id*. R. 111. Young has approximately 45 years of legal experience and has been a member of the Federal Defender Panel since the late 1970s. R. 91 at 94-95. During that time, he has represented "hundreds" of defendants, the vast majority of whom (about 95%) have pled guilty. *Id*. at 96.

---

[1] Despite the fact that he was represented by counsel throughout his criminal case, Estremera sent numerous *pro se* motions and letters to the Court. *See* Rs. 103, 104, 171, 415, 424, 443, 446, 448, 453, 456, 458, 459, 462, 463, 465, 466, 467, 470, 482, 483, 490, 492, 497, 499, 506, 507, and 508, *Estremera I*, No. 02-CR- 719-11.

Young testified that Estremera was "more involved than most" defendants and "seemed to do a lot of reading and research and had his own ideas about motions and so forth." *Id*. at 99. Estremera contends that he first told Young that he wanted to "take responsibility" for his actions in October 2002. *Id*. at 8-9. In January 2003, after he had been indicted, he claims that he sent a letter to Young stating that "there shouldn't be no problem why he shouldn't be able to get me a plea for me accepting my responsibility and just get out of the way without me having to cooperate." *Id*. at 14-15. He no longer has a copy of the letter, however, because it "got wet" when the basement at Lewisburg prison flooded. *Id*. at 14.

Estremera moved to replace Young as his attorney in February 2003. *Estremera I*, No. 02-CR-719-11, R. 171. At the hearing on his motion, Estremera explained why he wanted to replace Young:

> [Defendant Estremera:] I'm just having difficult times with him, and I feel that I just need a different attorney to represent me. The reason I came about the facts of substituting counsel was 'cause I did ask Mr. Young if he could go to the government and ask them if I could go over there, accept responsibility, and they said no. So I don't know how I'm going to go about, you know, figuring out where I'm at and what my time is if I can't go accept my responsibility. And at the same time, I don't understand how Mr. Young steadily keeps telling me that I'm able to get more than 15 years, and the main guy on our case is—he's locked on 15 years, and his case is more terrible than mine is. So I don't understand why he keeps telling me that I'm looking at more than 15 years. And every time I tell him one thing, he tells me another. So I just rather get a different lawyer and have a different opinion from someone else, because what he keeps telling me just doesn't make no sense to me. And what am I supposed to do? Am I supposed to just sit here and let the man keep telling me, "This is what you're looking at." I tell him I'm on level 32, maybe 34. He tells me I'm on 38, maybe worse. I think I'm on category—level IV or V. He thinks I'm on VI.
>
> [. . .]

3

> The Court: Anything else?
>
> Defendant Estremera: I'm not going to trial, Your Honor.
>
> The Court: Anything else?
>
> Defendant Estremera: I'm not going to trial, okay? Because obviously, you know, they got someone that's just going to honestly lie and point the finger at me, so there's no sense of me going to trial. But at the same time, you know, I'm trying to just go on ahead and work a reasonable amount of time and just take my responsibility and just go on with my case, you know, get it over with. But, you know, every time I talk to him, you know, there's this issue or that issue, this issue and that issue. You know, I was—I don't understand it.

R. 112-2 at 4-6. Judge Holderman denied Estremera's motion, noting that the Court alone had the authority to decide the length of any prison sentence he might receive. *Id*. at 21.

After the Court denied his motion for a new attorney, Estremera claims he told Young "[m]aybe two more times" that he was "willing to accept [his] responsibility," but unwilling to "cooperate against anyone." R. 91 at 12-13. He states that Young responded that "there was no plea for me at the time. There was no plea, that the government wasn't offering me a plea." *Id*. at 13. But that Young told him that he could get a plea if he "cooperated against others in this case." *Id*.

In April 2003, the government gave Young two draft plea agreements. *See* R. 103-1 (Draft Plea Agreement, dated April 18, 2003); R. 103-2 (Draft Plea Agreement, dated April 30, 2003). Both drafts required Estremera to "cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third-party in the event a third-party files a claim." R. 103-1 ¶

4

14; R. 103-2 ¶ 15. Neither draft required him to provide information or testimony against his co-defendants. In the second draft plea agreement, the government agreed to recommend a sentence "at the low end of the applicable guidelines range or that the Court impose the mandatory minimum sentence, whichever is higher." R. 103-2 ¶ 18. It also agreed to move to dismiss the felon in possession count against him. *Id.* ¶ 20; *see also* R. 103-1 ¶ 19 (same).

Young brought Estremera a copy of the first draft plea agreement, dated April 18, 2003, sometime in late April. *Id.* at 17-18. Estremera testified that Young did not review the terms of the agreement with him, except to say that "they were offering 15 years, and I would have to cooperate." *Id.* at 18. Young testified that he could not recall the specifics of his conversation with Estremera regarding the first draft plea agreement. *See id.* at 112 ("Q. And do you recall specifically the content of that—of those discussions? A. I really don't. It's too long ago."). It was his "normal practice," however, to review each provision of the initial draft plea agreement with his client. *Id.* at 130.[2] He denied that he told Estremera that he had to cooperate in order to plead guilty because he knows from his experience as an attorney that there is no such requirement. *Id.* at 113. He also denied that he told Estremera that the draft plea agreement required him to cooperate against his co-defendants because, on its face, it clearly did not. *Id.* ("There would be no reason for me to tell a client he as to cooperate when, in fact, the agreement doesn't require it.").

---

[2] With respect to subsequent drafts, Young testified that he might only review the new material or respond to his client's particular questions. R. 91 at 130.

5

In early May 2003, Young brought Estremera a second proposed plea agreement, dated April 30, 2003. *See* R. 91 at 21. Estremera testified that Young again failed to explain the draft plea agreement's terms, (except to say that he believed Estremera would receive a 23-year sentence), and again told him that the draft required him to cooperate with the government. *Id.* Young could not recall meeting with Estremera regarding the April 30 proposed plea agreement. *Id.* at 139-41. He stated, however, that he "would never advise a client that he has to cooperate. That's the client's decision." *Id.* at 41.

Estremera testified that he independently reviewed the proposed plea agreements in May 2003. *Id.* at 23. Based on his review, he understood that they did *not* require him to cooperate with the government. *Id.* Also, to this day, he disagrees with the factual bases in the draft plea agreements. Specifically, he maintains that the drafts falsely recited: (1) the length of his participation in the conspiracy; (2) that he kept firearms for protection when dealing drugs; and (3) that he conspired to purchase and distribute between 7 and 10 kilograms of cocaine. R. 91 at 54-62. He contends that he purchased only 4 kilograms, below the 5 kilogram quantity triggering the 10-year mandatory minimum sentence. *Id.* at 58, 61. Despite these disagreements, Estremera claims that he would have accepted the terms of the second draft plea agreement if Young hadn't told him that he would "'still have to cooperate to reap the benefit'—'to reap the benefits of the plea.'" *Id.* at 24.

6

Estremera was tried in June 2003 and convicted of conspiracy to distribute cocaine and felony possession of a firearm. *See Estremera I*, No. 02 CR 719-11, R. 317. On November 29, 2005, Judge Holderman sentenced him to life imprisonment. *See id.* R. 518. At his sentencing hearing, Estremera volunteered why he had chosen to go to trial: "I wasn't going to accept the lies that the government was asking me to accept on the drafts—that was just the bottom line, you know—so I made my move by going to trial." *See* R. 116-1 at 12.

## **LEGAL STANDARD**

"Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in [*Strickland v. Washington*, 466 U.S. 668 (1984)]." *Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012); *see also Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014). First, Estremera "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also Avila*, 751 F.3d at 536 ("[A] criminal defendant who pleads guilty on the advice of counsel can challenge that plea as having not been made knowingly and voluntarily if his attorney's representation fell below an objectively reasonable standard."). Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the plea context, this requires the defendant to show a "'a reasonable probability that, but

for counsel's errors,'" he would or would not have pled guilty. *Avila*, 751 F.3d at 536 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

ANALYSIS

I. **Whether Young's Representation Fell Below an Objective Standard of Reasonableness**

In its opinion reversing Judge Holderman's order, the Seventh Circuit noted that Estremera's ineffective assistance claim was based upon "the absence of a review of the offer's terms plus a false statement about a material part of the offer." *Estremera*, 724 F.3d at 778. Young credibly testified that he could not recall specifically whether he reviewed the draft plea agreements with his client. The relevant conversations were more than a decade old at that point. He did testify, however, that it is his normal practice to review the terms of an initial plea proposal with his client, and to review changes in any subsequent drafts. Young was a credible witness, and the Court finds that he is a competent attorney. Of course, that does not rule out the possibility that he deviated from his usual sound practices in this instance. But it is implausible that he would deliver the draft plea agreements to Estremera—who was actively involved in all aspects of the case—then fail to review them with him. Estremera admits that Young spoke with him about the sentencing guidelines before the government tendered the draft plea agreements. *See* R. 91 at 86-88. And clearly there had been an active dialogue between Estremera and Young about the risks of going to trial before the hearing on Estremera's motion to substitute counsel. Why would Young then refuse (or neglect) to review the government's draft plea agreement with his client? Besides

Estremera's implausible testimony about his meetings with Young, there is no evidence in the record suggesting that Young treated Estremera any differently than he treated his other clients, the vast majority of whom plead guilty.

Estremera's testimony that Young misrepresented the terms of the proposed plea agreements is likewise implausible. As evidenced by the draft plea agreements themselves, the government did *not* require that Estremera cooperate with the government against his co-defendants as a condition of the plea agreement. There is no evidence that Young ever misunderstood the provision in the agreement requiring Estremera to cooperate with the government with respect to forfeiture. *See* R. 91 at 113 (acknowledging that "the draft pleas clearly do not require cooperation"); *cf. Julian v. Bartley*, 495 F.3d 487, 496-97 (7th Cir. 2007) (counsel unreasonably misinterpreted *Apprendi v. New Jersey*, causing him to "grossly misstate" to his client the risk of going to trial). Estremera himself understood when he reviewed the agreements in 2003 that this provision did not require him to provide evidence against his co-defendants. R. 91 at 82. It is possible that Young lied to his client, but it is exceedingly unlikely because he had no motive to do so, and the Court finds that he did not.

Conversely, there is ample evidence in the record that Estremera did not plead guilty because he disputed material terms of the draft plea agreements. According to Estremera, Young told him several times before January 2003 that the government would offer him a plea agreement only if he cooperated. At the hearing on his motion to substitute counsel, however, Estremera did not tell Judge

9

Holderman that Young had told him that he had to cooperate to plead guilty. *See* R. 91 at 79. Instead, he told the Court that he disagreed with Young about the applicable Guidelines range. *Id.*; *see also* R. 112-2 at 4-6. This is consistent with Estremera's disagreements with the factual bases in the draft plea agreements. *See* R. 91 at 57-59 (denying, among other things, that he purchased cocaine in quantities sufficient to trigger the mandatory minimum sentence). It is also consistent with his statements at his sentencing hearing: "I wasn't going to accept the lies that the government was asking me to accept on the drafts—that was the bottom line, you know—so I made my move by going to trial, and this is the final stage of it." R. 116-1 at 12.

In sum, the Court concludes that Estremera has not shown that Young's conduct was objectively unreasonable.

## II.  Whether Estremera Would Have Accepted a Plea Agreement But For Young's Alleged Conduct

Even if the Court assumes that Estremera truthfully testified about his interactions with Young, he still could not satisfy *Strickland*'s second prong. Estremera's testimony that he would have pled guilty but for Young's insistence that he had to cooperate is not credible. R. 91 at 72. If he was ready to plead guilty from the outset but for Young's advice, then he certainly would have brought that issue to Judge Holderman's attention during the hearing on his motion to substitute counsel (if not sooner). Instead, he complained that Young's Guidelines calculations did not jibe with his own, and that he should receive a shorter sentence than "the main guy on our case." R. 112-2 at 4-6. Judge Holderman reasonably concluded that

10

Estremera was dissatisfied with Young because he believed that a different lawyer would persuade the government to cut him a better deal. *Id.*

Estremera knew that the draft plea agreements did not require him to assist the government's investigation and prosecution of any other individuals. *See* R. 91 at 82. He also knew that some of his co-defendants had pled guilty without cooperating with the government. *See id.* at 70. The notion that Estremera would accept Young's comments on faith seems far-fetched given his prior complaints about his representation. It is far more likely that he was dissatisfied with the draft agreement's terms. The second draft plea agreement set forth an estimated offense level of 37 (Young had told Estremera 38), and placed his criminal history in category VI (the same as Young's prior estimate). Estremera saw the case differently. He believed that the draft plea agreements inaccurately stated his participation in the conspiracy and the applicable Guidelines range for that conduct. *See Thompson v. United States*, 732 F.3d 826, 830 (7th Cir. 2013) (holding that the defendant "could not show prejudice because, even now, he refuses to acknowledge his full culpability as would be required under the plea offer").[3] For

---

[3] Estremera's attempts to distinguish *Thompson* are unpersuasive. *See* R. 95 at 5 n.5; *see also id.* at 13 n.11. There is no reason to believe that Estremera could have persuaded the government that he did not conspire to distribute 5 kilograms or more of cocaine when a jury later found that he had. *See Estremera I*, No. 02-CR-719-11, R. 310 ("Verdict Form as to the Amount of Cocaine Involved in the Conspiracy Charged in Count One"). With respect to the other disputes, the Court has only Estremera's testimony that the factual bases in the draft plea agreements are false. It would be unreasonable to suppose that the government would have entered into a plea agreement on substantially different terms than the ones they proposed.

that reason—not because he believed he had to cooperate—he "made [his] move by going to trial." R. 116-1 at 12.

As discussed, the Court finds that Young's conduct was not objectively unreasonable. In the alternative, assuming that Young did unreasonably advise his client during plea negotiations, the Court finds that Estremera has not shown a reasonable probability that he would have pled guilty but for Young's conduct.[4]

## Conclusion

For the foregoing reasons, the Court denies Estremera's § 2255 petition.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: October 6, 2015

---

[4] In light of the Court's conclusions, it is unnecessary to decide whether *Frye* is limited to formal plea offers. *Cf*. R. 96 at 18; R. 99 at 13-15.